UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 25-233-DLB

SERGIO ALFONZO RAMIREZ                                    PETITIONER


v.                      **MEMORANDUM OPINION AND ORDER**


JASON MAYDAK, et al.                                      RESPONDENTS

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## I.    INTRODUCTION

This matter is before the Court on Petitioner Sergio Alfonzo Ramirez's Petition for Writ of Habeas Corpus (Doc. # 1).  Respondents[1] having filed their Responses (Docs. # 5 and 6), and Petitioner having failed to file a Reply, the time for doing so having passed, this matter is now ripe for review.  For the following reasons, the Court will **grant** the Petition.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Ramirez is a native and citizen of Mexico who entered the United States without inspection in November of 2006.  (Doc. # 1 ¶ 17).  He has remained in the United States since his entry nearly twenty years ago.  (*Id.*).

---

[1]    Petitioner files this action against Samuel Olson, Field Office Director of Enforcement and Removal Operations ("ERO"), Chicago Field Office, Immigration and Customs Enforcement ("ICE"), Todd Lyons, Acting Director of ICE, Kristi Noem, Secretary, U.S. Department of Homeland Security ("DHS"), and Pamela Bondi, United States Attorney General, in their official capacities, respectively (collectively, "Respondents").  Petitioner additionally filed this action against Jason Maydak, Jailer, Boone County Detention Center.  Respondent Maydak filed his Response, arguing that he is not Petitioner's legal or immediate custodian.  (Doc. # 5).  This is not disputed by Petitioner, and therefore, the Court will address only the Response filed by the other listed Respondents.

1

Ramirez's Petition stems from his present detention by ICE. (*Id.* ¶ 1). On November 17, 2025, Ramirez was arrested in Bullitt County, Kentucky for four separate traffic violations—no/expired Kentucky registration receipt, no/expired registration plates, no operator's/moped license, and failure to produce an insurance card. (*Id.* ¶ 18). Although Ramirez was set for release on these charges later that day, he remained in detention for nearly two weeks because of an immigration hold issued by ICE before his eventual release. (*Id.*). During this period, the Bullitt County District Court—apparently unaware that Ramirez remained in custody on an immigration hold—issued a bench warrant for Ramirez's arrest when he failed to appear for a hearing related to his traffic offenses. (*Id.* ¶ 19 n. 1). Accordingly, Ramirez was detained for a second time on December 3, 2025 by Kentucky State Police. (*Id.* ¶ 19). On December 4, 2025, Ramirez was handed over to ICE custody and transferred to the Boone County Detention Center. (*Id.*). The next day, on December 5, DHS initiated removal proceedings against Ramirez by serving him with a Notice to Appear before an Immigration Judge ("IJ"). (Doc. # 6-1 at 2). Ramirez remains detained at the Boone County Detention Center without bond or the possibility of a bond hearing. (*Id.* ¶¶ 1-2).

On December 29, 2025, Ramirez filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (*Id.* ¶ 7). In his Petition, Ramirez argues that he is wrongfully detained at Boone County Detention Center and requests that the Court order his immediate release or, alternatively, a bond hearing before an IJ. (*Id.* ¶ 40). On December 30, 2025, the Court directed Respondents to respond to the Petition. (Doc. # 4). Respondents having filed their Responses (Docs. # 5 and 6), and Ramirez having

failed to file a Reply, the time for such filing having expired, this matter is now ripe for the Court's review.

## III.    ANALYSIS

Ramirez's Petition alleges that his detention violates the Immigration and Nationality Act ("INA") and deprives him of his right to due process under the Fifth Amendment.    (Doc. # 1 ¶¶ 2, 34).[2]    Specifically, he claims that Respondents have erroneously detained him pursuant to 8 U.S.C. § 1225(b)(2), which mandates detention during the pendency of removal proceedings.  (*Id.* ¶ 2).  Instead, Ramirez contends that he is subject to the discretionary detention provisions of 8 U.S.C. § 1226(a) and, as a result, he is eligible for release on bond.  (*Id.*).

### A.    Relevant Framework

At its core, habeas provides "a remedy for unlawful executive detention" *Munaf v. Geren*, 553 U.S. 674, 693 (2008), available to "every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).  The "typical remedy for such detention is, of course, release."  *Munaf*, 553 U.S. at 693.  Such relief "may be granted by the . . . district courts . . . within their respective jurisdictions."  28 U.S.C. § 2241(a). The Supreme Court has recognized that habeas relief extends to noncitizens.  *See Rasul v. Bush*, 542 U.S. 466, 483 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States . . . Section 2241, by its

---

[2]    Ramirez also argues that he is a member of the class certified in *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025).  (*Id.* ¶¶ 35-40).  However, because the Court grants Ramirez's habeas petition on its own merits, the Court declines to reach the question of whether any relief is available to Ramirez pursuant to the district court's order in *Maldonado Bautista*.  *See Velasco-Sanchez v. Raycraft*, No. 2:25-cv-13730, 2025 WL 3553672, at *3 (E.D. Mich. Dec. 11, 2025); *Mukhiguli v. Harper*, No. 2:25-cv-03149-TLP-atc, 2026 WL 66980, at *3 n. 3 (W.D. Tenn. Jan. 8, 2026).

terms, requires nothing more.").  Enacted in 1952, the INA consolidated previous immigration and nationality laws and now contains "many of the most important provisions of immigration law."  U.S. Citizenship and Immigration Services, *Immigration and Nationality Act* (July 10, 2019), https://www.uscis.gov/laws-and-policy/legislation/immigration-and-nationality-act#:~:text=The%20Immigration%20and%20Nationality%20Act,the%20U.S.%20House%20of%20Representatives.  Relevant to Ramirez's Petition, Congress has established two statutes, codified in Title 8, which govern detention of noncitizens pending removal proceedings—8 U.S.C. §§ 1225 and 1226.

The first statute, 8 U.S.C. § 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."  It states, in pertinent part:

> **(b)    Inspection of applicants for admission**
>
> **(2)    Inspection of other aliens**
>
> **(A)    In general**
>
> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229(a) of this title.

8 U.S.C. § 1225(b)(2)(A).  Important to note, for purposes of this provision, "an alien who is an applicant for admission" is defined as an "alien present in the United States who has not been admitted or who arrives in the United States."  8 U.S.C. § 1225(a)(1).

The second provision at issue, 8 U.S.C. § 1226, is titled "Apprehension and detention of aliens" and reads:

**(a) Arrest, detention, and release**

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

(1)    May continue to detain the arrested alien; and

(2)    May release the alien on—

(A)    Bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General . . . .

8 U.S.C. § 1226(a).

Section 1226(c) of the INA was amended by Congress in January 2025 with the enactment of the Laken Riley Act, which added a new subsection under Section 1226(c), requiring mandatory detention in certain circumstances.  Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025).  The amendment added a two-step process, in which the Attorney General must detain a noncitizen if

(1) they are inadmissible because they are in the United States without being admitted or paroled, obtained documents or admission through misrepresentation or fraud, or lacks valid documentation and

(2) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person.

*Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *3 (W.D. Ky. Sep. 19, 2025) (quoting U.S.C. §§ 1226(c)(1)(E)(i)-(ii)).

The distinction between 8 U.S.C. §§ 1225 and 1226 lies at the heart of Ramirez's Petition.  (*See* Doc. # 1 ¶ 21; Doc. # 6 at 5-9.)  Pursuant to 8 U.S.C. § 1226(a), noncitizens who are arrested and detained have the right to request a bond hearing before an Immigration Judge (IJ).  Conversely, under 8 U.S.C. § 1225(b)(2)(A), all aliens deemed

to be applicants for admission *must* be detained.  As noted *supra*, Ramirez, a noncitizen who has lived in the United States for nearly twenty years, has been detained by ICE and is being held at the Boone County Detention Center.  The question, then, is whether Ramirez must be detained without a hearing under § 1225(b)(2), or whether he has the right to request a bond hearing pursuant to § 1226.[3]

### B.    Statutory Interpretation

The parties agree on the basic facts of this case.  Rather, the central disagreement concerns which statutory provision applies to Ramirez.  Thus, the issue before the Court is one of statutory interpretation.  In interpreting statutes, district courts must "use every tool at their disposal to determine the best reading of the statute."  *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 400 (2024).  Statutes must be given their "ordinary, contemporary, common meaning" *Walters v. Metro Edu. Enters., Inc.*, 519 U.S. 202, 207 (1997), while also being read "in their context and with a view to their place in the overall statutory scheme."  *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012).

The Court first turns to the plain language of the statute.  The Court begins by looking at the first words one may read—the title.  A "[c]ourt gives each and every word meaning, and this includes the title."  *Barrera*, 2025 WL 2690565, at *4.  While section headings are not dispositive, "they are instructive and provide the Court with the necessary assurance that it is at least applying the right part of the statute in a given circumstance."  *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *8

---

[3]    The Court notes that the matter before this Court is *not* whether the executive branch has the authority to direct ICE/DHS to detain and deport noncitizens.  The question before the Court is a narrower one, to wit, whether those noncitizens—specifically Petitioner Ramirez—are entitled to request a bond hearing before an IJ prior to their removal hearing pursuant to 8 U.S.C. § 1226(a) or must be mandatorily detained pursuant to 8 U.S.C. § 1125(b)(2)(A).

(E.D. Mich. Aug. 29, 2025); *see also Dubin v. United States*, 599 U.S. 110, 120-21 (2023) ("This Court has long considered that the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute.") (internal quotations and citations omitted).

Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for a hearing[.]"  Section 1226 is titled "apprehension and detention of aliens" with a focus on "arrest, detention, and release[.]"  Thus, the text of the titles indicate that § 1225 governs "arriving" noncitizens who are *presently* "seeking admission" into the United States,[4] while § 1226 focuses on the apprehension and detention of those noncitizens already present in the country.  *See Edahi v. Lewis*, No. 4:25-cv-129-RGJ, 2025 WL 3466682, at *7 (W.D. Ky. Nov. 27, 2025) ("The added word of 'arriving' supports the notion that the statute governs 'arriving' noncitizens, not those present already.").

Section 1225(a)(1) states that an "applicant for admission" is "an alien present in the United States who has not been admitted or who arrives in the United States."  Under § 1225(b)(2)(A) any applicant for admission who is "seeking admission" and "is not clearly and beyond a doubt entitled to be admitted" must be detained.  The analysis then, is twofold.  For a noncitizen to be mandatorily detained under § 1225(b)(2)(A), they must be an applicant for admission who is also seeking admission.  Other district courts have acknowledged that this "question is puzzling at first blush. How can an 'applicant for admission' not 'seek admission?'"  *J.G.O. v. Francis*, No. 25-cv-7233, 2025 WL 3040142,

---

[4]      This is supported by the text of § 1225, which focuses on limited and specific methods of entry, for example, via "crewman" or "stowaways," leading to the conclusion that "Section 1225 is much more limited in scope than the United States asserts."  *Barrera*, 2025 WL 2690565, at *4.

at *3 (S.D.N.Y. Oct. 28, 2025).  However, this question is answered by looking to the statutory definition.  To be an applicant for admission, "[a]ll that's needed is presence without admission—in other words, it applies to the great number of undocumented immigrants who currently live here."  *Id*.  By contrast, seeking admission "might mean something more than that—some active desire or process toward admission."  *Id*.  One's *status* as an "applicant for admission" under the definitional language of § 1225(a)(1) is distinct from the *act* of "applying for" or "seeking" admission.

Congress provided a clear definition of aliens who are "applicants for admission." 8 U.S.C. § 1225(a)(1).  And this definition turns on an individual's physical presence in the United States.  *Id*.; *see also Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) ("[I]t is Congress's prerogative to define a term however it wishes, and it has chosen to limit the definition of an 'applicant for admission' to 'an alien present in the United States who has not been admitted or who arrives in the United States.'") (quoting 8 U.S.C. § 1225(a)(1)).   Thus, an alien present in the United States can qualify as an "applicant for admission" under § 1225 without also "seeking admission" by necessity.  *See Castañon-Nava*, 161 F. 4th at 1061 (noting that Congress "could easily have included noncitizens who are 'seeking admission' within that definition but elected not to do so").  Because Ramirez is neither an "arriving alien" nor "seeking admission" into the United States, the mandatory detention provisions contained § 1225(b)(2) do not apply to him.

Respondents disagree with this reading.  They take the position that for a noncitizen to qualify as an "applicant for admission" who is "seeking admission" he must merely be (1) present in the United States, and (2) not be legally admitted by an

immigration officer.  (Doc. # 6 at 17).  Thus, Respondents contend that despite Ramirez's continued residence in the United States for nearly twenty years he is still "seeking admission" because "any alien who is an 'applicant for admission' *is* 'seeking admission' for purposes of Section 1252(b)(2)(A) [sic]."  (*Id*. at 14).  Respondents' interpretation of § 1225(b)(2)(A), therefore, calls for mandatory detention of *every* noncitizen present in the United States who has not been lawfully admitted.  The Court finds this interpretation much too broad.  *See Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025) ("[A]ccepting Respondents' one-size-fits-all application of 1225(b)(2) to all aliens, with no distinctions, would violate fundamental canons of statutory construction.").

 In reaching this conclusion, Respondents misconstrue, or ignore entirely, the word "seeking" in the phrase "seeking admission."  Respondents argue that a noncitizen who is merely present in the United States is actively "seeking admission 'by operation of law.'" (Doc. # 6 at 15 (quoting *Matter of Lemus-Losa*, 25 I. & N. Dec. 734, 743-44 n. 6 (BIA 2012))).  But the use of the present progressive term "seeking" "implies action."  *Barrera*, 2025 WL 2690565 at *4; *see also Diaz v. Marinez,* 792 F. Supp. 3d. 211, 218 (D. Mass. 2025) ("[T]he phrase 'seeking admission[,]' [though] undefined in the statute[,] [] necessarily implies some sort of present-tense action."); *Edahi*, 2025 WL 3466682 at *8 ("Seeking means 'to go in search of' and is synonymous with 'pursue.'" (quoting Webster's Dictionary (11th ed. 2024))).

Furthermore, the INA defines the term "admission" as "the lawful *entry* of the alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A) (emphasis added).  Given that the word "entry" is left undefined

9

by the INA, courts interpret it according to its "ordinary, contemporary, common meaning." *Star Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017) (internal quotations omitted); *see also Gustafson v. Alloyed Co., Inc.*, 513 U.S. 561, 585 (1995) (Thomas, J., dissenting) ("The canon that we construe a statutory term in accordance with its ordinary or natural meaning applies only in the absence of a statutory definition." (cleaned up)). "That meaning is 'entering into . . . (a country),' which is '[t]o come or go in.'" *J.G.O.*, 2025 WL 3040142, at *3 (quoting *Entry*, OXFORD ENGLISH DICTIONARY (2d ed. 1989); *Enter*, OXFORD ENGLISH DICTIONARY (2d ed. 1989)).

Thus, it cannot be said that Ramirez, a noncitizen who has resided in the United States for decades is "actively seeking admission." *See J.G.O.*, 2025 WL 3040142, at *3 ("'[S]eeking admission' requires an alien to continue to want to go into the country. The problem . . . is that [the petitioner] is already here; you can't go into a place where you already are."). Furthermore, seeking lawful status or relief from removal is not the same as "seeking admission." *See Sanchez v. Mayorkas*, 593 U.S. 409, 415 (2021) (observing that "[l]awful status and admission . . . are distinct concepts in immigration law: Establishing one does not necessarily establish the other"). Thus, a noncitizen present in the United States may seek lawful status without simultaneously seeking admission. *Id.* (noting that a noncitizen who received Temporary Protected Status was not therefore constructively admitted to the United States).

Numerous district courts, including the undersigned Judge in multiple prior Orders, have come to the same conclusion. *See Barrera*, 2025 WL 2690565, at *4 ("Noncitizens who are present in the country for years, like [petitioner] who has been here 20 years, are not actively 'seeking admission.'"); *Lopez-Campos*, 2025 WL 2496379, at *7 ("There is

no logical interpretation that would find that Lopez-Campos was actively 'seeking admission' after having resided here, albeit unlawfully, for twenty-six years."); *Ochoa Ochoa v. Noem*, No. 25-cv-10865, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025) ("In agreement with other district courts, this court rejects Respondents' expanded reading of 1225(b)(2) and the term "seeking admission."). Likewise, the Seventh Circuit—the only circuit court to address the issue—agreed with this reading. *Castañon-Nava*, 161 F.4th at 1061 ("[p]ut another way, 'U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)'") (emphasis in original) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018)). To adopt Respondents' interpretation of § 1225(b)(2)(A) would render the phrase "seeking admission" "mere surplusage by equating it to 'applicant for admission.'" *Ochoa Ochoa*, 2025 WL 2938779, at *6; *see also Castañon-Nava*, 161 F.4th at 1061 (noting that such a construction "would render § 1225(b)(2)(A)'s use of the phrase 'seeking admission' superfluous, violating one of the cardinal rules of statutory construction"); *J.G.O.*, 2025 WL 3040142, at *3 ("[T]his is just another example of the government's construction inviting surplusage into the statute. That Congress chose to include this additional phrase—'seeking admission' . . . suggests that it must mean something distinct."). The Court declines to adopt such an expansive reading of § 1225(b)(2)(A).[5]

---

[5]    The Court notes that in their Response, Respondents repeatedly reference *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), an opinion from the Board of Immigration Appeals. Pursuant to the Supreme Court's decision in *Loper Bright*, courts "need not defer to any agency interpretation of law just because a statute is ambiguous." 603 U.S. at 412-413.

The Court now turns to the plain language of § 1226, which controls the "apprehension and detention of aliens."  Section 1226(a) permits a bond hearing if an "alien" who was "arrested and detained" on a "warrant issued by the Attorney General" remains in detention "pending a decision on whether the alien is to be removed from the United States."  The plain meaning of the statute is clear and applicable to Ramirez—an alien who was arrested and remains detained by ICE pending removal proceedings. (Doc. # 1 ¶¶ 19-20).  This is further bolstered by the record.

That § 1225(b)(2)(A) applies to noncitizens seeking admission into the United States while § 1226 applies to those noncitizens who are already present in the United States comports with the broader structure and context of our immigration law.  *Castañon-Nava*, 161 F.4th at 1061-62.  Indeed, "[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) (noting that "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, *irrespective of its legality*") (emphasis added).

Here, on the December 5, 2025 Notice to Appear issued to Ramirez, DHS checked the box labeled "You are an alien *present* in the United States who has not been admitted or paroled" rather than checking the box labeled "*arriving* alien."  (Doc. # 6-1 at 1) (emphasis added).  This supports this Court's conclusion and reaffirms the Supreme Court's determination in *Jennings v. Rodriguez,* that § 1226(a) applies to aliens already present in the United States, while § 1225(b)(2)(A) applies to arriving aliens.  583 U.S. at

298, 303.   Respondents' new post hoc position is simply "impermissible."   *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 22 (2020) (holding that "[t]he basic rule is clear: [a]n agency must defend its actions based on the reasons it gave when it acted," not on "impermissible post hoc rationalizations").

Most compelling for this Court is the addition of the Laken Riley Act, signed into law in January 2025.   The Laken Riley Act, which was incorporated into § 1226(c), provides that noncitizens who have been charged with, convicted of, or admitted to committing various listed crimes, are subject to mandatory detention.  8 U.S.C. § 1226(c).   If, as Respondents argue, Congress had intended for § 1225 to govern all noncitizens who are present in the country, regardless of when or where they were detained, then why did Congress even bother passing that legislation?   If Respondents' reading of § 1225 is correct, then the addition of the Laken Riley Act would be superfluous.  The Laken Riley Act added a mandatory detention requirement, "in an otherwise discretionary Section."  *Barrera*, 2025 WL 2690565, at *4.   As other courts have noted,

> [i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless and this Court, too, 'will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2).

*Lopez-Campos*, 2025 WL 2496379, at *8 (quoting *Maldonado*, 2025 WL 237441, at *12); *see also id*. ("Respondents' interpretation of the statutes would render [the Laken Riley Act] superfluous); *Ariza v. Noem*, No. 4:25-cv-165-RGJ, 2025 WL 3722014, at *6 (W.D. Ky. Dec. 23, 2025) ("If Section 1225(b)(2)(A) governed certain noncitizens as the United States claims it does, the Laken Riley Act would have been redundant and unnecessary."); *Gomes v. Hyde*, No. 1:25-cv-11571, 2025 WL 1869299, at *7 (D. Mass.

July 7, 2025) ("Such an interpretation, which would largely nullify a statute Congress enacted this very year, must be rejected."); *Martinez*, 792 F. Supp. 3d. at 221 ("[I]f, as the Government argue[s] ... a non-citizen's inadmissibility were alone already sufficient to mandate detention under section 1225(b)(2)(A), then the 2025 amendment would have no effect. This is a presumptively dubious result."); *Selvin Adonay E.M. v. Noem et al*, No. 25-cv-3975, 2025 WL 3157839, at *6 (D. Minn. Nov. 12, 2025) ("the presumption against superfluity is at its strongest because the Court is interpreting two parts of the same statutory scheme, and Congress even amended the statutory scheme this year when it passed the Laken Riley Act.").  This Court agrees with its sister courts.

Respondents fail to elaborate when, if § 1225(b)(2) applies to *every single* noncitizen's detention proceeding, § 1226 would ever, if at all, come into play.[6]  The Court finds it difficult to conceive of a situation in which Congress would enact an insignificant superfluous statute for no other reason than to add words to the page.  *See Stone v. I.N.S.*, 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect."); *see also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

---

[6]    Respondents make various public policy arguments on why noncitizens who have entered the country without detection should not be treated more favorably than those who entered lawfully.   (Doc. # 6-1 at 26).  While valid arguments, the text, as clearly indicated above, "does not currently reflect such public policy considerations."  *Maldonado*, 2025 WL 2374411, at *12. "Rather, such arguments may be made to Congress if Respondents would like to amend or repeal § 1225 or § 1226, but such policy arguments are not reflected in the Laken Riley Act amendment … passed only a few months ago."  *Id*.

The Court acknowledges that the United States cites a string of nonbinding district court decisions supporting its interpretation. For example, the United States cites to *Olalde v. Noem et al.*, a case from the Eastern District of Missouri. (Doc. # 6-1 at 2). There, the court agreed with the government's interpretation of § 1225(b)(2)(A), concluding that the petitioner was an applicant for admission because he was present in the United States and had not been legally admitted. No. 1:25-cv-00168-JMD, 2025 WL 3131942, at *3 (E.D. Mo. Nov. 10, 2025). In its analysis, the court looked not towards whether the petitioner was "seeking admission" but whether he was an "applicant for admission." *Id.* at *2. Its reasoning rested in part on the conclusion that it "makes no sense to describe an active applicant for admission as somebody who is not 'seeking' admission." *Id.* at *3. Yet, as the Court discussed above, "to be detained pursuant to Section 1225(b)(2)(A), that is *precisely* what the text requires." *Edahi*, 2025 WL 3466682, at *12. "Holding as *Olalde* does would require the Court to ignore the plain statutory text. But Courts must give effect to every word in the statute. . . In ignoring the very words of section 1225(b)(2)(A) *Olalde* defies this principle." *Id*.

Respondents also cite *Rojas v. Olson*, No. 25-cv-1437-bhl, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025). (Doc. # 6-1 at 2). However, the Court is no more persuaded by this decision. Specifically, the Court is unconvinced because *Rojas* did not conclude that the recent addition of the Laken Riley Act would be rendered superfluous if § 1225(b)(2)(A) required mandatory detention of all noncitizens. *See Rojas*, 2025 WL 3033967, at *9 ("[L]egislation passed in 2025 has little bearing on the meaning of legislation enacted in 1996. Indeed, nothing in the Laken Riley Act suggests any Congressional thoughts concerning the issues presented in this case."). This Court, and

many others, disagree with that interpretation. *See Edahi*, 2025 WL 3466682, at *11 ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect. . . *Rojas*' reading of the Laken Riley Act underscores this very premise.") (internal quotations omitted).

Finally, pertinent legislative and enforcement history reinforces the Court's conclusion. *See Loper Bright,* 603 U.S. at 386 ("[T]he longstanding practice of the Government—like any other interpretive aid—can inform [a court's] determination of what the law is."). Enacted in 1952, the INA "distinguished between aliens physically arriving in the United States and those who had entered the Country." Library of Congress, *Immigration Detention: A Legal Overview* (Sep. 16, 2019), https://www.congress.gov/crs-product/R45915#_Ref17891326. In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") which focused on whether the noncitizen "had been lawfully admitted into the country by immigration authorities." *Id*. Since the IIRIRA's enactment "the statutory framework governing detention has largely remained constant." *Id*. In applying the INA to detention proceedings, the Government has, for the past thirty years, consistently applied § 1226(a).

It was not until July of 2025 when DHS/ICE announced a new policy, titled "Interim Guidance Regarding Detention Authority for Applicants for Admission" where it deemed all persons who entered the United States without inspection "applicants for admission" under § 1225, that the Government changed course. U.S. Customs and Border Protection, *Detention of Applicants for Admission*, (Sep. 18, 2025) https://www.cbp.gov/document/foia-record/detention-applicants-admission; *see also Lopez-Campos*, 2025 WL 2496379 at *5 ("For the past 30 years, the Government has

16

applied Section 1226(a)[.]" It is only "now that . . . they want the Court to declare that the application of Section 1226(a) is incorrect.").  This sudden change contradicted the long-established understanding that § 1225(b) "applies primarily to aliens seeking entry into the United States" while § 1226(a) "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 298, 303; *see also id*. at 288 ("Section 1226(a) sets out the default rule for those aliens [already present in the United States.]").  Thus, the enforcement history reflects a longstanding practice of applying § 1226(a) to noncitizens already residing in the country, which is "powerful evidence that interpreting [the INA] in that way is natural and reasonable[.]"  *Abramski v. U.S.*, 573 U.S. 169, 202-203 (2014) (Scalia, J., dissenting).

"The plain language of the statutes, the overall structure, the intent of Congress, and over 30 years of agency action make clear that Section 1226(a) is the appropriate statutory framework … for noncitizens who are already in the country and facing removal." *Lopez-Campos*, 2025 WL 2496397, at *5.  Therefore, the Court finds that Ramirez is not subject to § 1225(b)(2)(A).  Rather, the facts of the case make clear that his detention is governed by § 1226(a).

### C.    Due Process

Because the Court has concluded that § 1226(a) is the appropriate statutory framework to apply to Ramirez, the Court must now determine whether his current detention violates his due process rights.

### 1.    The Entry Fiction Doctrine

In their Response, Respondents argue that "the due process rights of an alien seeking initial entry are no greater than whatever the procedures authorized by

Congress." (Doc. # 6 at 25 (citing *Dep't Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020)). Indeed, the Supreme Court "has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982); *see also U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.") (citations omitted). And because Respondents contend that Ramirez is an "unadmitted alien[]" subject to the mandatory detention provisions of § 1225(b)(2), Respondents conclude that he "is receiving all process that is due." (Doc. 6 at 25).[7]

In support of their argument, Respondents rely on the "so-called 'entry fiction.'" (*Id.*). This doctrine applies to individuals who, although having technically effected an entry into the United States, "are 'treated' for due process purposes 'as if stopped at the border.'" *Thuraissigiam*, 591 U.S. at 139 (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 205, 215 (1953)). The entry fiction applies to three groups of persons. *Make the Road N. Y. v. Noem*, No. 25-5320, 2025 WL 3563313, at *22 (D.C. Cir. Nov. 22, 2025).

The first group consists of those individuals who, on attempting to enter the United States, are stopped at the border and, accordingly, have not "been naturalized, nor acquired domicile or residence within the United States[.]" *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892). Although such aliens may enjoy "temporary harborage"

---

[7]    For the reasons already addressed, Ramirez's detention is not governed by § 1225(b)(2) but § 1226. Accordingly, Ramirez is entitled to the protections afforded by that Section. *See Rodriguez-Acurio v. Almodovar*, No. 2:25-cv-6065 (NJC), 2025 WL 3314420, at *26 (E.D.N.Y. Nov. 28, 2025).

on United States soil while in the custody of immigration authorities, they obtain "no additional rights" and are treated "as if stopped at the border." *Mezei*, 345 U.S. at 215 (citations omitted).

A second group, as recognized by the Supreme Court's decision in *Thuraissigiam*, consists of "individuals who are not stopped right at the border, but have only briefly 'set foot on U.S. soil[.]'" *Make the Road*, 2025 WL 3563313, at *22 (quoting *Thuraissigiam*, 591 U.S. at 139). In *Thuraissigiam*, the Supreme Court reaffirmed the "century-old rule" that aliens "seeking initial entry" enjoy only those due process protections the government bestows upon them. *Thuraissigiam*, 591 U.S. at 139. The issue in *Thuraissigiam*, however, was whether an alien who was apprehended after "making it 25 yards into U.S. territory before he was caught" was entitled to greater due process than one who was stopped at the border. *Id.* The Court held that he was not. *Id.* Recognizing that an alien detained so "shortly after unlawful entry cannot be said to have 'effected an entry,'" the Supreme Court held that individuals like the *Thuraissigiam* respondent are subject to the entry fiction and treated as though they remain "on the threshold." *Id.* at 140 (quoting *Mezei*, 345 U.S. at 212).

Finally, the entry fiction also applies to aliens who are initially detained at ports of entry but subsequently "paroled elsewhere in the country . . . pending removal." *Id.* (citing *Mezei*, 345 U.S. at 215; *Leng May Ma*, 357 U.S. at 188-90; *Kaplan v. Tod*, 267 U.S. 228, 230-31 (1925) (alien ). "Parole occurs when the government chooses to release from detention and into the United States, under strict conditions, an individual who was stopped at or near the border." *Make the Road*, 2025 WL 3563313, at *22; *see also Jennings*, 583 U.S. at 288 (noting that applicants for admission detained under § 1225

may be temporarily released on parole for urgent humanitarian reasons or significant public benefit and that such release "shall not be regarded as an admission of the alien") (quoting 8 U.S.C. § 1182(d)(5)(A)).

The entry fiction does not apply to Ramirez because he does not fall into one of these categories. First, Ramirez was not stopped at the border upon his arrival. Rather, he entered the Untied States without inspection in November of 2006. (Doc. # 1 ¶ 17). Nor does Ramirez fall into the category recognized in *Thuraissigiam*. He was not detained near the border or "shortly after [his] unlawful entry" into the United States. *Thuraissigiam*, 591 U.S. at 140. Ramirez was detained by ICE on December 4, 2025 in Bullitt County, Kentucky—nearly twenty years after he entered the United States. (Doc. # 1 ¶ 19).

In arguing for the application of the entry fiction to Ramirez, Respondents rely principally on the Supreme Court's decision in *Thuraissigiam*. (Doc. # 6 at 25-26). In so doing, they urge the Court to disregard the circumstances of Ramirez's detention by ICE, claiming that "[i]t does not matter whether an alien was apprehended '25 yards into U.S. territory' or 25 miles, nor does it matter if they were here unlawfully and evade detection for 25 minutes or 25 years . . . their detention is no different from an alien stopped at the border." (*Id.* at 26 (quoting *Thuraissigiam*, 591 U.S. at 139)). But *Thuraissigiam* plainly recognized just the opposite—the geographic and temporal circumstances of an alien's detention make all the difference when it comes to the application of the entry fiction. 591 U.S. at 140 (holding that "like an alien detained after arriving at a port of entry, an alien [who made it 25 yards past the border prior to his arrest] is 'on the threshold'") (quoting *Mezei*, 345 U.S. at 212). The Court rejects Respondents' implausibly expansive reading of *Thuraissigiam*. Finally, Ramirez is not subject to the entry fiction because he was never

paroled into the United States. Indeed, DHS explicitly stated on Ramirez's Notice to Appear that he is "an alien present in the United States *who has not been admitted or paroled*." (Doc. # 6-1 at 1 (emphasis added). Accordingly, the Court declines to apply the entry fiction here. *See Navarrete v. Noem*, No. 4:25-cv-157-DJH, 2025 WL 3298081, at *3 (W.D. Ky. Nov. 26, 2025) ("Courts in the Sixth Circuit, however, have refused to apply [the entry fiction] doctrine under § 1225 to noncitizens who have been present in the United States for extended periods.") (citing *Am.-Arab Anti-Discrimination Comm. v. Ashcroft*, 272 F. Supp. 2d 650, 667-68 (E.D. Mich. 2003)).

### 2.    *Ramirez's Fifth Amendment Rights*

The Fifth Amendment provides, in pertinent part, that no person shall be "deprived of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. V.  The Supreme Court has repeatedly held that the Due Process Clause extends to all persons, regardless of citizenship status. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (quoting *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025))).  To determine whether a detainee's due process rights have been violated, courts apply a three-part balancing test to weigh

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 321 (1976).

It is undisputed that Ramirez has a cognizable private interest in avoiding detention without an opportunity for a bond hearing. *See Hamdi*, 542 U.S. at 531 (affirming "the

fundamental nature of a citizen's right to be free from involuntary confinement by his own government without due process of law[.]").  Indeed, "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause[.]"  *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects.").  Our immigration law has long recognized that noncitizens have an interest in freedom from detention and removal without an individualized hearing.  *See Yamataya v. Fisher*, 189 U.S. 86, 101 (1903).    Further, the Supreme Court has previously required individualized hearings for deprivations of interests less fundamental than Ramirez's interest in freedom from detention.  *See Goldberg v. Kelly*, 397 U.S. 254, 268 (1970) (requiring an individualized hearing prior to the termination of welfare benefits).

Second, the risk of erroneous deprivation of that interest is high if Ramirez is not afforded a detention hearing.  *See Edahi*, 2025 WL 3466682, at *14 (holding that detention "without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest") (citation omitted); *Yao v. Almodovar*, No. 25 Civ. 9983 (PAE), 2025 WL 3653433, at *11 (S.D.N.Y. Dec. 17, 2025) (finding that ICE's "discretion-free detention of [the petitioner] abridged his rights under [8 U.S.C.] § 1226 and violated due process") (citations omitted).  To date, Ramirez has not had a detention hearing at which his eligibility for bond is determined on the merits of his individual circumstances.  Thus, Ramirez's present detention creates a high risk of an erroneous deprivation of his liberty interest.    Accordingly, the second *Mathews* factor favors Ramirez.

As to the third factor, Respondents have not put forth any argument whatsoever advocating for the United States' interest. The Court, on its own, concludes that the United States likely has a strong interest in immigration proceedings, but certainly, the "existing statutory and regulatory safeguards" which this Court discussed at length above, "serve the governmental interest in public safety." *Barrera*, 2025 WL 2690565, at *7 (quoting *Günaydin v. Trump*, No. 25-cv-01151, 2025 WL 1459154, at *10 (D. Minn. May 21, 2025)). Accordingly, all three factors weigh in favor of Ramirez. As other courts have concluded, Ramirez's detention without a bond hearing violates the due process rights afforded to him by the Fifth Amendment and he is therefore entitled to an individualized custody determination.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS SO ORDERED** as follows:

(1)     Petitioner's Petition for Writ of Habeas Corpus (Doc. # 1) is **GRANTED**;

(2)     Respondents are **ORDERED** to **immediately release** Petitioner, or in the alternative, provide him with a **bond hearing** under 8 U.S.C. § 1226(a) **within seven (7) days of the date of this Order**; and

(3)     Respondents shall file a Status Report with this Court **on or before February 16, 2026** to certify compliance with this Order. The Status Report shall include when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

This 2nd day of February, 2026.



Signed By:

*David L. Bunning*

Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Cov2025\25-233 MOO re Habeas Petition.docx